UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE BASIRICO,
Guardian and Conservator for
KYLE MOFFITT,

Plaintiff,

vs.

Case No. 05-CV-74691
HON. GEORGE CARAM STEEH

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant.

______________________________/

ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANT'S RENEWED MOTION FOR DISMISSAL (#38), GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT, AND RULING ON THE NO-FAULT ACT'S "ONE-YEAR BACK" RULE

Defendant State Farm Mutual Automobile Insurance Association moves to dismiss[1] Christine Basirico's claims on behalf of Kyle Moffitt of silent fraud, fraud/misrepresentation, negligence, and violations of Michigan's Consumer Protection Act ("MCPA"), M.C.L. §§ 445.901 et seq.. State Farm also moves for a ruling as to the applicability of the "one-year back" rule of M.C.L. § 500.3145(1), and for dismissal of Basirico's claims for no-fault insurance benefits seeking room and board expenses. A hearing on the motion was held on October 2, 2006.

## I. Background

Christine Basirico, guardian and conservator of Kyle Moffitt, filed a complaint on December 9, 2005 alleging Moffitt was catastrophically injured in an April 13, 1989 motor

[1] State Farm misidentified its motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 56. State Farm relies exclusively on Federal Rule of Civil Procedure 12(b) governing motions to dismiss.

vehicle accident while insured by State Farm. Moffitt allegedly requires 24-hour attendant care. Basirico alleges State Farm has refused to pay for all attendant care services, has failed to pay reasonable agency prices for attendant care services provided by family members, and has failed to pay for all of Moffitt's housing accommodations. Basirico also alleges State Farm failed to disclose all available no-fault insurance benefits. On April 25, 2006, the court denied State Farm's initial motion to dismiss, and granted Basirico leave to file an amended complaint. Basirico filed a First Amended Complaint on May 22, 2006 alleging silent fraud for State Farm's failure to disclose all available on-fault insurance benefits (Count I); fraudulent misrepresentation based on false statements made by State Farm insurance adjusters that Moffitt was not entitled to certain no-fault insurance benefits (Count II); breach of contract (Count III); negligence premised on State Farm's failure to exercise due care in undertaking an obligation to fully inform Moffitt of available no-fault insurance benefits (Count IV); and liability under the MCPA premised on violations of the Michigan Insurance Code, M.C.L. § 500.2006(3) and M.C.L. § 500.2026 (Count V). State Farm renews its motion to dismiss all Counts except Count III alleging breach of contract. State Farm also seeks a ruling as to the applicability of the "one-year back" rule of M.C.L. § 500.3145(1).

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim on an issue of law. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering a Rule 12(b)(6) motion, a court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." G.M. Eng'r and Assoc., Inc. v. West Bloomfield Tp., 922 F.2d 328,

330 (6th Cir. 1990). Sitting in diversity, this court is required to decide an issue of state law as would the highest court of the state. Combs v. International Ins. Co., 354 F.3d 568, 577 (6th Cir. 2004). If given a choice between an interpretation of state law which reasonably restricts liability, and one which greatly expands liability, a federal district court "should choose the narrower and more reasonable path." Id.

**A. Tort Claims**

State Farm argues that Basirico's claims other than breach of contract should be dismissed because Michigan's No-Fault Act provides the exclusive remedy for an insurer's failure to pay timely no-fault benefits, and because Moffitt has not alleged an actionable tort claim premised on the breach of a duty arising independent of their insurance contract. Basirico counters that the No-Fault Act abolished only third-party tort claims, noting further that the Michigan No-Fault Act does not contain an express exclusive remedy provision as do other Michigan statutes such as the Workers' Disability Compensation Act, M.C.L. § 418.101 et seq..

At the outset, State Farm concedes that claims alleging the breach of a duty other than a duty owing under a no-fault insurance policy are actionable in tort and not barred by Michigan's No-Fault Act. See Hearn v. Rickenbacker, 428 Mich. 32, 39-40, 400 N.W.2d 90 (1987). "[I]f a relationship exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." The Society of St. Vincent DePaul v. Mt. Hawley Ins. Co., 49 F. Supp. 2d 1011, 1019 (E.D. Mich. 1999) (quoting Haas v. Montgomery Ward and Co., 812 F.2d 1015, 1016 (6th Cir. 1987) (quoting Hart v. Ludwig, 347 Mich. 559, 567, 79 N.W.2d 895 (1956))). The legal principle that a tort claim may be actionable if it alleges misconduct independent of a contractual breach has been uniformly applied in no-fault cases. See Tennant v. State Farm Mutual Automobile Ins. Co., 143 Mich. App. 419, 425, 372 N.W.2d 582 (1985) (citing Roberts v. Auto-Owners Ins. Co., 135

Mich. App. 595, 354 N.W.2d 271 (1983), lv. gtd. 419 Mich. 933 (1984)[2]; Butt v. DAIIE, 129 Mich. App. 211, 341 N.W.2d 474 (1983), and Jerome v. Michigan Mutual Auto Ins. Co., 100 Mich. App. 685, 300 N.W.2d 371 (1980)).

A stray quotation of Shavers v. Kelley, 402 Mich. 554, 578, 267 N.W.2d 72 (1978) in Cruz v. State Farm Mutual Automobile Ins. Co., 466 Mich. 588, 595, 648 N.W.2d 591 (2002) – that "[u]nder this [no-fault] system, victims of motor vehicle accidents would receive insurance benefits for their injuries as a substitute for their common law remedy in tort" – does not establish, as State Farm argues, that all tort claims filed by an insured against his no-fault insurer are preempted by the No-Fault Act. At best, the quotation is unpersuasive dicta. Further, the Shavers court later reasoned that "[b]y *partially* abolishing tort liability to those who suffer personal injuries as a result of motor vehicle accidents, the act may lessen the number of motor vehicle personal injury tort suits in the courts." Shavers, 402 Mich. at 622-23 (emphasis added). Whether Basirico's instant tort claims are actionable depends on whether the claims allege actionable misconduct independent of a contractual breach. Roberts, 422 Mich. 594, 604-05; Hearn, 428 Mich. at 39-40; Tennant, 143 Mich. App. at 425; Society of St. Vincent DePaul, 49 F. Supp. 2d at 1019.

**b. Silent Fraud and Fraud/Misrepresentation**

A claim of fraud requires proof of: (1) a material representation; (2) that was false; (3) that was knowingly or recklessly made as false; (4) made with the intent that the plaintiff would rely on the misrepresentation; (5) the plaintiff's action in reliance on the misrepresentation; and (6) injury. Hi-Way Motor Co. v. International Harvester Co., 398 Mich. 330, 336, 247 N.W.2d 813 (1976). "Silent fraud" is actionable for the suppression

[2] In Roberts v. Auto-Owners Ins. Co., 422 Mich. 594, 374 N.W.2d 905 (1985), the Michigan Supreme Court vacated a $2,500.00 jury award for intentional infliction of emotional distress in a case seeking replacement service benefits under M.C.L. § 500.3107(b) of the No-Fault Act on ruling that the plaintiff had failed to prove a prima facie tort claim. The claim was not found to be barred by the No-Fault Act.

of information which the defendant owed a legal or equitable duty under the circumstances to disclose. Hord v. Environmental Research Institute of Michigan, 463 Mich. 399, 412, 617 N.W.2d 543 (2000) (citing United States Fidelity and Guarantee Co. v. Black, 412 Mich. 99, 125, 313 N.W.2d 77 (1981)).

Basirico generally alleges that State Farm instituted on-going policies "of not paying family members and others commercially reasonable agency market prices for attendant care" and "not informing its insureds of all benefits available under the insurance policy[.]" First Amended Complaint, ¶¶ 26-27, at 5. Basirico continues by alleging examples of State Farm's institutional polices dating back to 1976, and previous lawsuits filed against State Farm by other insureds.[3] Following additional allegations that State Farm did not disclose to Moffitt or his agents "the right to receive commercially reasonable agency market rates for care provided to him and for on-call attendant care" and "all of the benefits to which he was entitled under the policy of insurance[,]" Id. ¶¶ 30-32, at 8, Basirico alleges a specific factual basis for the silent fraud claims:

> 33. . . . . In a letter dated September 26, 1991 to adjuster Robinson, Ms. [Beverly] Hill stated that she does not know all the coverages available. Despite this request, no one ever honestly told Ms. Hill the coverages available.
>
> 34. As a result, Plaintiff and his agents and guardian(s) were led to believe that they were receiving all benefits to which they were entitled.

Id. at 8. Basirico goes on to allege specific affirmative misrepresentations made by State Farm claim adjusters. Id. ¶ 35, at 8-9.

Count I alleging silent fraud incorporates all of these factual allegations, and alleges State Farm's duty to disclose all no-fault insurance benefits to which Moffitt is entitled arises

---

[3] Basirico refers without further citation to Crump v. State Farm, Morales v. State Farm, Paquette v. State Farm, Tonegatto, Tyson, Dowadait v. State Farm, and circumstances allegedly underlying these lawsuits. See First Amended Complaint, ¶¶ 28, at 29.

from "the Uniform Trade Practices Act, M.C.L. § 500.2001, *et seq*., and case law, and equitable duties[.]" Id. ¶ 39, at 10. In opposing State Farm's motion to dismiss this silent fraud claim, Basirico asserts that State Farm's duty to accurately disclose Moffitt's no-fault benefits arises from: (1) statutory requirements of the Uniform Trade Practices Act ("UTPA"), M.C.L. § 500.2001 et seq., specifically M.C.L. § 500.2006(3)[4] and M.C.L. § 500.2026(1)[5]; (2) a common law duty requiring insurance companies to explain insurance benefits to their insureds arising from the insurer-insured relationship; and (3) State Farm's act of voluntarily undertaking the duty to explain all available no-fault insurance benefits to Moffitt's agents and other State Farm insureds.

It is well established that no private action in tort exists for a violation of the UTPA. See Society of St. Vincent DePaul, 49 F. Supp. 2d at 1020; Crossley v. Allstate Ins. Co., 155 Mich. App. 694, 697, 400 N.W.2d 625 (1987); Young v. Michigan Mutual Ins. Co., 139 Mich. App. 600, 604, 362 N.W.2d 844 (1985). Basirico's silent fraud claim is premised in part on alleged violations of the UTPA, M.C.L. § 500.2006 and M.C.L. § 500.2026, as were the tort claims alleged in Crossley. See Crossley, 155 Mich. App. at 697. As explained in Crossley, breach of a statutory duty owing under the UTPA cannot support an independent tort claim as a matter of law. Id. State Farm is entitled to dismissal of Basirico's silent fraud claims to the extent they are based on a duty to disclose arising from statutory duties imposed by the UTPA. Conley, 355 U.S. at 45-46.

---

[4] "An insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the thirty days." M.C.L. § 500.2006(3).

[5] For example, M.C.L. § 500.2026(1)(a) reads: "(1) Unfair methods of competition and unfair or deceptive acts or practices in the business of insurance, other than isolated incidents, are a course of conduct indicating a persistent tendency to engage in that type of conduct and include: (a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue. . . . ."

The parties' insurer-insured relationship is a contractual relationship governed by the No-Fault Act.  Tort claims alleged against a no-fault insurer are actionable only if they allege misconduct independent of this contractual relationship.  Roberts, 422 Mich. 594, 604-05; Hearn, 428 Mich. at 39-40; Tennant, 143 Mich. App. at 425; Society of St. Vincent DePaul, 49 F. Supp. 2d at 1019.  As explained by one federal district court in dismissing a tort claim alleged by an insured against his no-fault insurer:

> . . . .  The duty owed plaintiff [insured] by [insurer] Mutual Insurance arises out of the insurance contract between plaintiff and Mutual Insurance and out of the Michigan No-Fault Act that governs such contracts.  Neither the insurance contract nor the Michigan statute creates any duty on the part of Mutual Insurance to act as plaintiff's advisor with respect to informing him of the insurance benefits that are covered by the insurance contract or provided by statute.

Wynn v. State Farm Mutual Ins. Co., 856 F. Supp. 330, 335 (E.D. Mich. 1994).  This reasoning is consistent with settled Michigan law that a fiduciary relationship does not exist between an insurer and an insured.  See Drouillard v. Metropolitan Life Ins. Co., 107 Mich. App. 608, 621, 310 N.W.2d 15 (1981).

In the absence of a fiduciary relationship between an insured and insurer, Michigan courts have held that an action of fraud against an insured must "be predicated on a misrepresentation" that "is not an action on the policy[.]"  Hearn, 428 Mich. at 39 (citing inter alia Drouillard, 107 Mich. App. at 621).  See also Crossley, 155 Mich. App. at 697 ("Nor can the relationship between an insurer and an insured support [tort] recovery for plaintiff.").  The Michigan Supreme Court has further explained that nonfeasance of a contractual duty cannot alone support a tort claim because "[a]s a general rule, there must be some active negligence or misfeasance to support tort."  Roberts, 422 Mich. at 605 (emphasis omitted) (quoting Hart v. Ludwig, 347 Mich. 559, 563, 79 N.W.2d 895 (1956)).

Neither Hudick v. Hastings Mutual Ins. Co., 247 Mich. App. 602, 637 N.W.2d 521 (2001), nor Johnson v. State Farm Mutual Automobile Ins. Co., 183 Mich. App. 752, 455

N.W.2d 420 (1990), provide persuasive authority for Basirico's proposition of law that the insurer-insured relationship itself gives rise to a non-contractual affirmative duty on the part of a no-fault insurer to explain available insurance benefits. Hudick cites Johnson in a footnote in reasoning that the Hudick plaintiff-insured should have been able to "reasonably rely" on the defendant-insurer to advise him of the benefits to which he was entitled, thereby tolling the No-Fault Act's "one-year back" rule set forth in M.C.L. § 500.3145(1). Hudick, 247 Mich. App. at 610 n.1. The Johnson court had cited such "reasonable reliance" in holding that the "one-year back" rule tolls from the time an insured notifies his insurer of a specific loss, of which the insurer knows or has reason to know is compensable under the insurance policy, until the insurer either formally denies coverage or specifically advises the insured that he may be entitled to benefits and provides the insured with the appropriate forms. Johnson, 183 Mich. App. at 764-65. The Michigan Supreme Court has since expressly overruled this holding. See Devillers v. Auto Club Ins. Co., 473 Mich. 562, 581, 585, 702 N.W.2d 539 (2005). In rejecting judicial tolling of the "one-year back" rule as described in Johnson, the Michigan Supreme Court is unlikely to accept Basirico's current argument that an insured's ability to "reasonably rely" on his insurer to explain available insurance benefits generates an affirmative duty on the part of an insurer to explain such benefits. Combs, 354 F.3d at 577. The insurer-insured relationship alone does not support Basirico's tort claim of silent fraud. Hearn, 428 Mich. at 39-40; Roberts, 422 Mich. 594, 604-05; Tennant, 143 Mich. App. at 425; Society of St. Vincent DePaul, 49 F. Supp. 2d at 1019; Wynn, 856 F. Supp. at 335. State Farm is entitled to dismissal of Basirico's silent fraud claim to the extent it is based solely on the insured-insurer relationship. Conley, 355 U.S. at 45-46.

Basirico's final theory of silent fraud is that State Farm voluntarily assumed a duty to properly explain all available insurance benefits to Moffitt's agents and other State Farm

insureds, citing several cases for the proposition that the failure to fulfil a voluntarily assumed duty is actionable in tort. See Zychowski v. A.J. Marshall Co., Inc., 233 Mich. App. 229, 231, 590 N.W.2d 301 (1999); Baker v. Arbor Drugs, Inc., 215 Mich. App. 198, 204-205, 544 N.W.2d 727 (1996); Sponkowski v. Ingham County Rd. Comm., 152 Mich. App. 123, 127-128, 393 N.W.2d 579 (1986); Garza v. Northwest Airlines, Inc., 305 F. Supp.2d 777, 785-786 (E.D. Mich. 2004). Each of these cases involved allegations of negligence. Scott v. Harper Recreation Center, 444 Mich. 441, 452-453, 506 N.W.2d 857 (1993), also relied upon by Basirico, held that a nightclub owner could not be held liable in fraud for failing to prevent a patron from being shot after voluntarily implementing and advertising safety precautions taken on the premises.

While Basirico's citations support a general principle of law regarding the voluntary assumption of a duty, the Michigan Supreme Court has explained with respect to a claim of silent fraud:

> Turning to the question of silent fraud, we agree with the analysis of the conflict resolution panel in [M&D, Inc. v. W.B. McConkey, 231 Mich. App. 22, 585 N.W.2d 33 (1998)] that mere nondisclosure is insufficient. There must be circumstances that establish a legal duty to make a disclosure. See United States Fidelity and Guarantee Co. v. Black, 412 Mich. 99, 125, 313 N.W.2d 77 (1981)[.] [quotation omitted].
>
> As the cases cited in McConkey indicate, a legal duty to make a disclosure will arise most commonly in a situation where inquiries are made by the plaintiff, to which the defendant makes incomplete replies that are truthful in themselves, but omit material information.

Hord, 463 Mich. at 412. This reasoning is consistent with Michigan precedent concluding that an insured's claim of silent fraud as alleged against an insurer must be predicated on an accompanying affirmative misrepresentation or active misfeasance. See Roberts, 422 Mich. at 605; Hearn, 428 Mich. at 39; Crossley, 155 Mich. App. at 697; Drouillard, 107 Mich. App. at 621.

In addition to alleging that State Farm adjuster Betty Robinson never "honestly"

responded to Beverly Hill's September 26, 1991 letter-inquiry regarding available no-fault insurance benefits, Basirico alleges the following affirmative misrepresentations or acts of misfeasance committed by State Farm representatives:

> a. In or about May, 1990, adjuster Betty Robinson told Beverly Hill that $5.00 per hour was all that she could get paid for providing attendant care to Kyle [Moffitt]. This was false and State Farm knew it was false.
>
> b. At approximately the same time, in 1990, adjuster Robinson represented to Beverly Hill that they were not entitled to be paid for attendant care while Kyle Moffitt slept. This was false and State Farm knew it was false.
>
> c. Around the same time, adjuster Robinson represented to Beverly Hill that State Farm was only obligated to pay for one-half of the cost of air-conditioning for Kyle's benefit.
>
> d. Around the same time, adjuster Robinson represented to Beverly Hill that State Farm was only obligated to pay mileage with respect to transportation.
>
> e. On June 5, 2001, adjuster Angela Murphy represented to Ms. Basirico that she was not entitled to payment for case management services provided to Kyle because she did not have sufficient education and training to be a case manager.
>
> f. In approximately August 2001, adjuster Murphy represented to Ms. Basirico that she was only entitled to be paid the rate that an unskilled aide is paid.
>
> g. In a letter dated July 27, 2005, adjuster Robinson represented to Kyle's father, Ronald Moffitt, that State Farm did not have a duty to supply housing or pay utilities or groceries for Kyle.

First Amended Complaint, ¶ 35, at 8-9. Basirico further identifies a document as demonstrating State Farm voluntarily undertook a duty "to disclose to Kyle Moffitt carefully and fully all benefits available under the insurance policy." Id. ¶¶ 24, at 4. The document, attached to the First Amended Complaint as Exhibit B, reads in part:

**Our Commitment to Our Policy Holders**

> *It is the responsibility of the State Farm claim staff to implement Company philosophy with respect to claim handling. Our commitment to our policy-holders is to treat them like a good neighbor. We should:*

          * * *

> • Explain all relevant coverages under the policy. Encourage policyholders to report all losses and avail themselves of all benefits under their coverages.

* * *

> • Communicate with and be responsive to inquiries from insureds and their attorneys by promptly answering letters and phone calls.

Count II alleging fraudulent misrepresentation alleges State Farm's representations were made "[t]hroughout the handling of this claim . . . consistent with its institutional policies." Id. ¶ 47, at 12.

Construing these allegations in a light most favorable to Basirico, Basirico has alleged underlying circumstances that could support an actionable claim of silent fraud predicated on State Farm's alleged intentional failure to disclose available no-fault insurance benefits while making affirmative misrepresentations of coverage and committing other acts of misfeasance. Hord, 463 Mich. at 412; Roberts, 422 Mich. at 605; Hearn, 428 Mich. at 39; Crossley, 155 Mich. App. at 697; Drouillard, 107 Mich. App. at 621. State Farm allegedly made incomplete or untruthful replies to queries about available insurance benefits while, at the same time, committing themselves to explain all relevant coverages. Hord, 463 Mich. at 412. The acts allegedly committed by State Farm are not limited to acts of nonfeasance – that is, simply failing to explain available no-fault insurance benefits as Moffitt's insurer – but include acts of misfeasance that, construed in favor of Basirico, allege that State Farm told Moffitt's agents to rely on State Farm's adjusters to explain the benefits available to Moffitt, then misrepresented those available benefits through a combination of silence and affirmative misrepresentations. State Farm is not entitled to dismissal of Basirico's silent fraud claim to the extent it is based on State Farm's alleged voluntary assumption of a duty to explain available insurance benefits to Moffitt, coupled with State Farm's alleged affirmative fraudulent misrepresentations and omissions of material fact. Conley, 355 U.S. at 45-46. Stated differently, Basirico has alleged an actionable silent

fraud claim that State Farm suppressed information under circumstances that generated a non-contractual duty to disclose. Hord, 463 Mich. at 412.

State Farm argues it cannot be held liable for misrepresenting the contents of Moffitt's insurance policy, either through silence or affirmative representations, because Moffitt's agents were required to read the policy and are deemed to have full knowledge of its content as a matter of law. Exceptions to this general rule of contract law include traditional contract defenses such as fraud. See Rory v. Continental Ins. Co., 473 Mich. 457, 470, 470 n.23, 703 N.W.2d 23 (2005). Basirico could develop a record at trial that supports a finding that State Farm's alleged acts of fraud permitted Moffitt and his agents to reasonably rely on State Farm's explanation of insurance benefits even though the policy language was available for reading. The possibility also remains that the policy language itself does not address the specific misrepresentations alleged by Basirico, as for example, that $5.00 an hour was the maximum rate that Beverly Hill could be paid in 1990 for providing attendant care services.

State Farm also argues that a lay-person's uninformed opinion as to policy coverage cannot constitute fraud as a matter of law, citing Bromley v. Citizens Ins. Co., 113 Mich. App. 131, 317 N.W.2d 318 (1982). The Bromley plaintiff-insured did not plead that he was intentionally mislead by his insurance *agent*, who opined incorrectly that the plaintiff's personal injuries resulting from a motorcycle accident were not covered by his automobile no-fault insurance policy. See Bromley, 113 Mich. App. at 136. The Bromley court held that, once the insurance agent told the plaintiff his legal opinion as to coverage, "it was incumbent upon plaintiff at the time to seek legal assistance if he disagreed[,]" with the court refusing to "impose strict liability on insurance agents to interpret the law and insurance contracts accurately." Id. at 137.

Bromley is distinguishable. Basirico has alleged fraud premised on

misrepresentations made by State Farm *adjusters* following State Farm's alleged voluntary assumption of a duty to explain all relevant coverages. Unlike Bromley, Basirico is not seeking to impose strict liability for a reasonable legal opinion; Basirico's claims of fraud require proof that State Farm adjusters knowingly or recklessly made false representations with the intent that Moffitt and his representatives would rely on the misrepresentations to their detriment. Hi-Way Motor Co., 398 Mich. at 336. It remains possible for Basirico to develop a factual record that would support such a finding at trial. Conley, 355 U.S. at 45-46.

State Farm's argument that Basirico has failed to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b) is only persuasive to the extent Basirico has alleged that State Farm voluntarily assumed the duty to explain available insurance coverage to Moffitt. Basirico has alleged the time, place, and content of alleged misrepresentations made by State Farm adjusters Betty Robinson and Angela Murphy, a fraudulent scheme, fraudulent intent, and a resulting injury. See First Amended Complaint, ¶ 35, at 8-9. Coffey v. Foamex L.P., 2 F.3d 157, 161-162 (6th Cir. 1993). The alleged scheme included State Farm's voluntary assumption of a duty to "[e]xplain all relevant coverages under the policy" followed by an intentional and fraudulent failure to disclose. See First Amended Complaint, ¶ 34, at 8 and attached Exhibit B. Coffey, 2 F.3d at 161-162. Basirico's only material omission is an allegation of the time, place, and receipt of the "Our Commitment to Our Policy Holders" document by Moffitt or his representatives. In that a viable silent fraud claim depends on Basirico's proof of State Farm's voluntary assumption for a duty to explain all relevant coverages as evidenced by the document, Basirico is required by Rule 9(b) to plead when, where, and by whom the "Our Commitment to Our Policy Holders" document was communicated to Moffitt or his agents. Coffey, 2 F.3d at 161-162. Basirico should be permitted to correct this pleading deficiency through

the filing of an amended complaint. See Fed. R. Civ. P. 15(a). State Farm's argument that Basirico cannot meet the "clear and convincing evidence" standard for proving fraud is conclusionary, particularly in light of the standard to be applied in ruling on State Farm's motion to dismiss under Rule 12(b)(6). G.M. Eng'r and Assoc., Inc., 922 F.2d at 330.

State Farm's argument that Basirico has failed to plead sufficient facts to toll the statute of limitations applicable to fraud claims is not well taken. Silent fraud itself may toll the running of a statute of limitations under a theory of equitable estoppel. Conagra v. Farmers State Bank, 237 Mich. App. 109, 141, 602 N.W.2d 390 (1999). See also Robinson v. Associated Truck Lines, 422 Mich. 946, 374 N.W.2d 678 (1985) (remanding for determination on fact questions of whether no-fault claims administrator misrepresented availability of no-fault benefits to insureds). Basirico could develop a factual record that supports a finding that Moffitt and his agents were reasonably induced by State Farm's alleged silent fraud and fraudulent misrepresentations to delay seeking counsel and filing a lawsuit. Conley, 355 U.S. at 45-46.

State Farm is entitled to dismissal of Basirico's silent fraud claims as alleged in Count I to the extent the claims are premised on alleged duties to disclose owing under the UTPA or as a consequence of the insurer-insured relationship. Id. State Farm is not entitled to dismissal of Basiricio's silent fraud claims as alleged in Count I to the extent they are predicated on State Farm's alleged voluntary assumption of a duty to explain available insurance benefits coupled with State Farm's alleged affirmative fraudulent misrepresentations and omissions of material fact. Id. Basirico will be granted leave to plead when, where, and by whom the "Our Commitment to Our Policy Holders" document was communicated to Moffitt or his agents. State Farm is not entitled to dismissal of Basirico's fraudulent misrepresentation claims as alleged in Count II. Id.

**ii. Negligence**

State Farm argues it is entitled to dismissal of Basirico's negligence claim in the absence of a recognized legal duty to accurately explain available no-fault insurance benefits separate from duties owing under the No-Fault Act and insurance contract. As argued by Basirico, a party may create a legal duty by voluntarily assuming a function it is not otherwise required to perform and, once assumed, the duty "must be performed with some degree of skill or care." Zychowski, 233 Mich. App. at 231. Consistent with the analysis of Basirico's silent fraud claims and the remaining possibility that Basiricio could develop a factual record which supports a finding that State Farm voluntarily assumed a duty to explain all available no-fault insurance benefits to Moffitt and his representatives, it likewise remains possible for Basirico to develop a record which would support a finding that State Farm was negligent in performing its voluntary duty to explain available no-fault benefits. State Farm is not entitled to dismissal of Basirico's negligence claim as alleged in Count IV. Conley, 355 U.S. at 45-46.

**B. Michigan Consumer Protection Act Claims**

Count V of Basirico's complaint alleges State Farm is liable under the MCPA for violations of the UTPA, specifically for violations of M.C.L. § 500.2006(3) and M.C.L. § 500.2026(1). See footnotes 4 and 5, supra. On July 13, 1999, the Michigan Supreme Court held in Smith v. Globe Life Ins. Co., 460 Mich. 446, 467, 597 N.W.2d 28 (1999) that a private cause of action could be maintained under the MCPA for violations of the UTPA. In response to the Smith decision, the Michigan Legislature amended the MCPA in 2000 to provide that the MCPA does not apply or create a private cause of action for violations of the UTPA. See M.C.L. § 445.904(3). The amendment took effect on March 28, 2001. See 2000 P.A. 432. The parties argue whether the 2000 amendment to the MCPA applies retroactively to bar Basirico's MCPA claim as a matter of law.

A statutory amendment may not apply retroactively if it abrogates a vested right.

See In re Certified Question, 416 Mich. 558, 572, 331 N.W.2d 456 (1982); Hansen-Snyder Co. v. General Motors Corp., 371 Mich. 480, 485, 124 N.W.2d 286 (1963). Although the parties and the court have not found a published decision addressing the issue, two unpublished decisions of the Michigan Court of Appeals have held that the amendment to M.C.L. § 445.904 should not apply retroactively. Kitterman v. Michigan Educational Employees Mutual Ins. Co., No. 247428, 2004 WL 1459523, at *7 (Mich. Ct. App. June 29, 2004) (unpublished); Kubiak v. Heritage Ins. Co., No. 240936, 2004 WL 133999, at *3 (Mich. Ct. App. Jan. 27, 2004) (unpublished).

> . . . . "Amendments of statues are generally presumed to operate prospectively unless the Legislature clearly manifests a contrary intent." Tobin v. Providence Hosp, 244 Mich.App 626, 661-662; 624 NW2d 548 (2001). Generally, when a statute is amended, the pertinent date for determining whether to apply the amended statute is the date the cause of action arose. Hill v General Motors Acceptance Corp, 207 Mich.App 504, 513-514; 525 NW2d 905 (1994). Unless the Legislature clearly indicates otherwise, a statute is not given retroactive effect if it impairs vested rights. On the other hand, a statute may be given retroactive effect if the statute is remedial or procedural in nature. Tobin, supra at 661-663. The amendment at issue here is not remedial or procedural in nature. But it does abolish a cause of action under the MCPA for actions that are unlawful under chapter 20 of the Insurance Code. Accordingly, because the Legislature has not otherwise stated, the amendment should not be applied retroactively. Because the amendment was effective after plaintiffs' claim arose and after their complaint was filed, it does not apply to plaintiffs' claim.

Kubiak, 2004 WL 133999 at *3.

Consistent with existing Michigan Supreme Court precedent for interpreting statutes, as set forth in In re Certified Question and Hansen-Snyder Co., this court concludes that the Michigan Supreme Court would follow the reasoning of Kitterman and Kubiak and apply the 2000 amendment to the MCPA prospectively from its effective date of March 28, 2001. Combs, 354 F.3d at 577. Kovelle v. Hartford Ins. Co., No. 242749, 2003 WL 22928874 (Mich. Ct. App. Dec. 11, 2003) (unpublished), relied upon by State Farm for retroactive application of the amendment, affirmed the dismissal of the insureds' MCPA

misrepresentation claim reasoning that "[e]ven if we were to credit plaintiffs' argument that a private cause of action survived the amendment . . . because plaintiffs' action accrued before amendment, plaintiffs failed to establish a prima facie case of misrepresentation under the MCPA." Id. at *2. The Kovelle court offered no analysis as to why the insured's MCPA claim might be barred as a result of the complaint being filed after the date of the amendment. Id. "Michigan courts have followed the rule that the relevant inquiry in determining the applicability of a statute is the date on which the cause of action arose." Hill v. General Motors Acceptance Corp., 207 Mich. App. 504, 513-514, 525 N.W.2d 905 (1995) (citing In re Certified Question, 416 Mich. at 573; Franklin v. Ford Motor Co., 197 Mich. App. 367, 368-369, 495 N.W.2d 802 (1992)). Basirico alleges that the acts of fraud which support her MCPA claims occurred as early as 1990, well before M.C.L. § 445.904 was amended effective March 28, 2001. Prospective of application of the MCPA amendment would not bar these claims.

State Farm's argument that the 2000 MCPA amendment should apply retroactively because it merely clarified a statutory uncertainty is not persuasive. The Michigan Supreme Court in Smith found no statutory uncertainty in 1999 when holding that a private cause of action existed under the MCPA for a violation of the UTPA. Smith, 460 Mich. at 467. State Farm does not dispute that M.C.L. § 445.904 was amended by the Legislature to abrogate this private cause of action as recognized in Smith.

State Farm is not entitled to the dismissal of Basirico's MCPA claims based on a retroactive application of M.C.L. § 445.904(3) as amended in 2000. Basirico could develop a factual record which would support a finding that her MCPA claims accrued prior to the March 28, 2001 amendment of the MCPA. Conley, 355 U.S. at 45-46.

**C. No-Fault Act's "One-Year Back" Rule**

State Farm argues that the No-Fault Act's "one-year back" rule limits Basirico's

recovery of damages on all of her claims, contractual and non-contractual, to one year back from the date this lawsuit was filed on December 9, 2005, or to December 9, 2004. Basirico counters that her allegations of fraudulent concealment and estoppel preclude application of the "one-year back" rule to any of her claims. Basirico also argues that State Farm has waived application of the "one-year back" rule by failing to allege it as an affirmative defense.

On August 25, 2005, the Michigan Court of Appeals in Grant v. AAA Michigan, Wisconsin, Inc., 266 Mich. App. 597, 703 N.W.2d 196 (2003) held that an insured's MCPA claim to recover back-pay for attendant care services owing under the No-Fault Act was governed by the No-Fault Act's "one-year back" rule, M.C.L. § 500.3145(1), reasoning that the MCPA claim was merely a relabeled no-fault claim. Id. at 200. The complaint in Grant was filed in December 2001, and sought back-pay for attendant care expenses incurred from 1995 through 1999, more than "one-year back" from the date the MCPA claim was filed. Id. at 198, 202. The Court of Appeals determined that the MCPA claims were barred by the "one-year back rule." Id. at 611. On application for leave to appeal, the Michigan Supreme Court vacated the decision and remanded for reconsideration in light of the Smith court's recognition of a private cause of action under the pre-amended MCPA. Grant v. AAA Michigan, Wisconsin, Inc., 474 Mich. 988, 707 N.W.2d 592 (2005) (citing Smith, 460 Mich. at 467). On August 24, 2006, the Michigan Court of Appeals reasoned on remand that it need not decide whether the MCPA claims survived the 2000 amendment of the MCPA because the claims, even if actionable under Smith, would remain barred by the "one-year back" rule of the No-Fault Act. Grant v. AAA Michigan, Wisconsin, Inc. (On Remand), 272 Mich. App. 142, --- N.W.2d --- (2005). The Court of Appeals noted that the defendant-insurer waived the right to argue that the 2000 amendment barred the MCPA claims by conceding in the trial court that the amendment did not apply. Id.

General application of the No-Fault Act's "one-year back" rule has also recently been addressed by the Michigan Supreme Court. The rule itself is set forth within M.C.L. § 500.3145(1):

> Sec. 3145. (1) An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. <u>However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.</u> The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury.

(emphasis added). On July 29, 2005, the Michigan Supreme Court decided <u>DeVillers</u>, <u>supra</u>, holding that the "one-year back" rule must be enforced by courts according to its plain and unambiguous terms. <u>DeVillers</u>, 473 Mich. at 577, 581, 593. <u>Devillers</u> overruled <u>Lewis v. DAIIE</u>, 426 Mich. 93, 393 N.W.2d 167 (1986) and <u>Johnson</u>, 183 Mich. App. 752, which previously combined to hold that the "one-year back" rule tolled from the time an insured notified his insurer of a compensable loss of which the insurer knew or should have known, until the insurer formally denied coverage or advised the insured that he may be entitled to benefits. The <u>Devillers</u> court applied its holding retroactively to "all pending cases in which a challenge to <u>Lewis</u>' judicial tolling approach has been raised and preserved." <u>Id</u>. at 587. In speaking directly to a court's equitable powers to toll a statute of limitations, Justice Young wrote for the majority:

> Section 3145(1) plainly provides that an insured "may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced." There has been no allegation of fraud, mutual mistake, or any other "unusual circumstance" in the present case.

> Accordingly, there is no basis to invoke the Court's equitable power. Justice Cavanagh errs, as did the Lewis Court, in assuming that equity may trump an unambiguous and constitutionally valid statutory enactment.

Id. at 591.

On July 28, 2006, the Michigan Supreme Court held in Cameron v. Auto Club Ins. Co., 476 Mich. 55, 718 N.W.2d 784 (2006), that the minority/insanity tolling provision of the Revised Judicature Act ("RJA"), M.C.L. § 600.5851(1)[6], does not apply to the "one-year back" rule articulated in M.C.L. § 500.3145(1) of the No-Fault Act. Id. at 58. The Cameron majority reiterated a distinction drawn in Devillers between a statute of limitations for bringing an action to recover no-fault benefits, of which there are two found within M.C.L. § 500.3145(1), and a limitations period for which no-fault benefits may be recovered, being the "one-year back" rule of M.C.L. § 500.3145(1). Cameron, 476 Mich. at 61 (citing DeVillers, 473 Mich. at 574).

> By its unambiguous terms, MCL 600.5851(1) concerns when a minority or person suffering from insanity may "make the entry or file the action." It does not pertain to the damages recoverable once an action has been brought. MCL 600.5851(1) then is irrelevant to the damages-limiting one-year-back provision of MCL 500.3145(1). Thus, to be clear, the minority/insanity tolling provision in MCL 600.5851(1) does not operate to toll the one-year-back rule of MCL 500.3145(1).

Id. at 62.

Upon consideration of the decisions in Grant, DeVillers, and Cameron, this court is convinced that the Michigan Supreme Court, if faced with the issue, would rule that the "one-year back" rule found in M.C.L. § 500.3145(1) limits the recovery of damages for unpaid no-fault insurance benefits to one year back from the time the lawsuit is filed,

---

[6] "Sec. 5851. (1) Except as otherwise provided in subsections (7) and (8), if the person first entitled to make an entry or bring an action under this act is under 18 years of age or insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run. This section does not lessen the time provided for in section 5852."

regardless of the theory of recovery, and is not a statute of limitations subject to tolling. Combs, 354 F.3d at 577. The Grant cases illustrate that an insured cannot merely relabel a claim to recover no-fault insurance benefits as, for example, an MCPA claim, as was attempted in Grant, to avoid the "one-year back" rule. The Devillers decision emphasizes that the "one-year back" rule will be enforced by the Michigan Supreme Court as written, and therefore a no-fault insured suing his insurer to recover previously withheld or unpaid no-fault benefits "may not recover benefits for any portion of the loss incurred more than one year before that date on which the action was commenced." M.C.L. § 500.3145(1). The statute speaks in terms of commencing an "action," which could include any theory of recovery, as opposed to a "claim" alleging breach of the insurance contract and No-Fault Act. Cameron, along with DeVillers as cited therein, make clear that the Michigan Supreme Court will continue to differentiate between a statute of limitations that may be tolled by a statutory provision within the RJA, and a damages limitation period during which no-fault benefits may be recovered to which tolling provisions applicable to statutes of limitations will be found "irrelevant." Cameron, 476 Mich. at 62. Basirico argument that the Cameron decision is inapplicable because the RJA's tolling provision of M.C.L. § 600.5851 became effective on October 1, 1993 after Moffitt's April 13, 1989 injury is thus unavailing; tolling a statute of limitations, in the view of a majority of the Michigan Supreme Court, "does not pertain to the damages recoverable once an action has been brought." Id. Following the Cameron decision requiring M.C.L. § 500.3145(1) to be enforced as written as a damages limitation, the DeVillers decision rejecting equitable tolling of M.C.L. § 500.3145(1), and the reasoning in Grant on remand that recovery of no-fault benefits will be limited under the "one-year back" rule even if sought under a legal theory different than breach of contract, the court is persuaded that the Michigan Supreme Court would hold that the "one-year back" rule of damages would not be "tolled" by allegations of fraud, fraudulent

concealment, or estoppel, any more than would an insured's status as a minor or victim of insanity. Cameron, 476 Mich. at 61. Basirico's argument that State Farm waived the "one-year back" rule as a defense is not supported by the record.

This is not to say that State Farm is entitled to dismissal of Basirico's claims of silent fraud, fraudulent misrepresentation, negligence, or violations of the UTPA as actionable under the MCPA. Absent significant legal development by the parties, it remains possible for Basirico to develop a factual record at trial that would support recovery under these non-contractual claims for damages *other than* damages for the recovery of no-fault insurance benefits. Under the plain and unambiguous wording of M.C.L. § 500.3145(1), the "one-year back" rule applies only to the recovery of no-fault insurance benefits. Construing the pleadings in a light most favorable to Basirico, State Farm is not entitled to dismissal of Basirico's claims of silent fraud, fraudulent misrepresentation, negligence, or violations of the UTPA as actionable under the MCPA based solely on application of the "one-year back" rule of M.C.L. § 500.3145(1). Conley, 355 U.S. at 45-46.

**C. Room and Board Claims**

State Farm argues Basirico's claims for housing, room and board, or other accommodations are not cognizable under Michigan's No-Fault Act, citing Griffith v. State Farm Mutual Auto Ins. Co., 472 Mich. 521, 697 N.W.2d 896 (2005). Basirico counters that she is not seeking recovery of no-fault insurance benefits for food or room and board, but only benefits for special accommodations necessitated by Moffitt's injuries. The precise nature of Moffitt's needs, and an accurate application of the holding in Griffith, require factual development as to whether the housing and room accommodations sought by Basirico are necessary for Moffitt's recovery or rehabilitation from the injuries he suffered in the accident, or are necessary for his care because of the injuries. Griffith, 472 Mich. at 536. State Farm is not entitled to dismissal of Basirico's claim for "[a]ccommodations in the

form of housing and room" because it remains possible for Basirico to develop a factual record that would support such a claim consistent with the holding in Griffith.

## III. Conclusion

For the reasons set forth above, State Farm's motion to dismiss is hereby GRANTED, IN PART, to the extent Basirico's claims of silent fraud set forth in Count I are premised on an alleged duty to disclose under the UTPA, and an alleged duty to disclose arising from the insurer-insured relationship. These claims of silent fraud ONLY are hereby DISMISSED with prejudice. The remainder of State Farm's motion to dismiss is hereby DENIED. Basirico is hereby granted leave to plead with greater particularity when, where, and by whom the "Our Commitment to Our Policy Holders" document was communicated to Moffitt or his agents. Basirico's recovery of no-fault insurance benefits, under any theory of recovery, is limited as a matter of law under M.C.L. § 500.3145(1) to no-fault benefits owing on or after December 9, 2004. Basirico's recovery of damages for other than no-fault insurance benefits are not limited by the "one-year back" rule of M.C.L. § 500.3145(1).

SO ORDERED.

Dated: December 5, 2006

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on December 5, 2006, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk