UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE BASIRICO,
Guardian and Conservator for
KYLE MOFFITT,

        Plaintiff,

vs.

Case No. 05-CV-74691
HON. GEORGE CARAM STEEH

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

_____/

## ORDER GRANTING IN PART DEFENDANT STATE FARM'S MOTION FOR PARTIAL SUMMARY JUDGMENT (# 135)

Defendant State Farm moves for partial summary judgment of plaintiff Christine Basirico's non-contractual claims alleged on behalf of Kyle Moffitt of silent fraud, fraud/misrepresentation, negligence, and violations of Michigan's Consumer Protection Act (MCPA), M.C.L. §§ 445.901 et seq.. State Farm also moves for partial summary judgment pursuant to the "one-year back" rule of M.C.L. § 500.3145(1), and as to Basirico's claims seeking no-fault insurance benefits relative to housing and accommodations. Pursuant to E.D. Mich. Local R. 7.1(e)(2), it is ORDERED that the motion be resolved without oral argument.

## I. Background and Standard of Review

The circumstances underlying this lawsuit have been set forth in previous opinions and orders, and will be reiterated herein only to the extent necessary to adjudicate the

instant motion. Kyle Moffitt was catastrophically injured in an April 13, 1989 motor vehicle accident while insured by State Farm. Basirico, as Moffitt's guardian and conservator, filed this action on December 9, 2005 alleging that State Farm has failed to pay reasonable agency prices for no-fault attendant care services. In her May 22, 2006 Amended Complaint, Basirico seeks recovery under claims of silent fraud (Count I), fraudulent misrepresentation (Count II), breach of contract (Count III), negligence (Count IV), and liability under the MCPA based on violations of the Michigan Insurance Code, M.C.L. § 500.2006(3) and M.C.L. § 500.2026 (Count V). State Farm seeks summary judgment of Counts I, II, IV, and V.

State Farm has raised the legal issues presented here in previous motions to dismiss. See April 25, 2006 Order Denying Without Prejudice Defendant's Motion for Summary Judgment[1] and Granting Plaintiff's Motion to File an Amended Compliant (# 17); December 5, 2006 Order Granting In Part, and Denying In Part, Defendant's Renewed Motion for Dismissal, Granting Plaintiff Leave to File an Amended Complaint, and Ruling On the No-Fault Act's "One Year Back" Rule (# 67); January 4, 2007 Order Denying Plaintiff's Motion for Reconsideration (# 74); April 23, 2007 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss for Failure to Comply with Court's Order and FRCivP 12(b)(6) (#95); May 23, 2007 Order Denying State Farm's Renewed Motion to Dismiss (#104). State Farm filed this motion for partial summary judgment on January 31, 2008.

State Farm's earlier Rule 12(b)(6) motions to dismiss were decided on the pleadings

---

[1] The motion was construed as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

alone, requiring the court to accept all of Basirico's factual allegations as true in determining whether any set of facts consistent with the allegations would entitle Basirico to relief on a particular claim.  See G.M. Eng'r and Assoc., Inc. v. West Bloomfield Tp., 922 F.2d 328, 330 (6th Cir. 1990).  The standard for determining whether State Farm is now entitled to partial summary judgment requires the court to review the proffered evidence in deciding "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to  the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001).  If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986).  Rather, there must be evidence on which a jury could reasonably find for non-movant Basirico.  See McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## II. Fraudulent Misrepresentation and Silent Fraud

Basirico's silent fraud claims premised on alleged duties to disclose under the

3

Uniform Trade Practices Act (UTPA), M.C.L. §§ 500.2001 et seq., and the insurer-insured relationship have already been dismissed. December 12, 2006 Order, at 23. Basirico's silent fraud claim premised on a document titled "Our Commitment to Policy Holders" was dismissed without prejudice on April 23, 2007 to allow Basirico to seek leave to file an amended silent fraud claim should she uncover factual support for the reasonable reliance element of the claim, as well as when, where, and by whom the document was communicated to Moffitt or his agents. See April 23, 2007 Order, at 4-5. Basirico has not moved to file an amended silent fraud claim, and does not proffer evidence here to support such a claim. The court need not address these previously dismissed claims.

Basirico's remaining silent fraud claims are based on alleged representations made by State Farm claim adjusters Betty Robinson and Angela Murphy to Moffitt's mother Beverly Hill, father Ronald Moffitt, and guardian Basirico: (1) Robinson allegedly told Hill in 1990 that she could only be paid $5.00 an hour for providing attendant care services; (2) Robinson allegedly told Hill in 1990 that she was not entitled to be paid attendant care services for times when Kyle Moffitt was sleeping; (3) Robinson allegedly told Hill in 1990 that she was entitled to be paid for only one-half the cost of air-conditioning required for Kyle Moffitt's benefit; (4) Robinson allegedly told Hill in 1990 that State Farm was only obligated to pay Hill mileage with respect to transportation; (5) Murphy allegedly told Basirico in 2001 that she was not entitled to be paid for case management services because Basirico lacked sufficient education and training to be a case manager; (6) Murphy allegedly told Basirico in 2001 that she was only entitled to be paid at the rate of an unskilled aide; and (7) Robinson allegedly informed Ronald Moffitt in a July 27, 2005 letter that State Farm owed no duty to supply housing or to pay for utilities and groceries. See

December 5, 2006 Order, at 10 (citing First Amended Complaint, ¶ 35, at 8-9).

In opposing State Farm's motion for summary judgment of the silent fraud claims, Basirico proffers the deposition testimony of Hill, Robinson, and Murphy, and Robinson's written response to a December 5, 1990 letter written by Hill. Hill testified that her initial question to Robinson would have been "either is there a compensation for this or is there something that could be done to help provide for my son." Hill June 6, 2007 Transcript, at 24. Hill did not remember Robinson's exact response, testifying that Robinson said "something about that you would be paid, and it would -- I do remember the amount was not very much and I do remember it wasn't for 24-hour care, and that shocked me." Id. Hill did not remember where the $5.00 an hour rate "came from," nor how the number of compensable hours was computed, but did remember that when she learned she would not be paid for providing 24-hour a day care, "I said, Why not, and they told me, Well, for eight hours your son would be sleeping." Id at 25. Hill testified she believed the fraudulent statements made to her by Robinson were "That I couldn't get paid for 24-hour care," "I think I asked about gas mileage and I never really received the proper reimbursement for that," the denial of her request to be paid for a vacation that included Moffitt, and being reimbursed for only one-half of the central air conditioner installed in the home she shared with Moffitt. Id at 55, 57-58.

Although not having an "independent memory of actually speaking to" Hill, Robinson testified that "it is my general practice on catastrophic claims to tell the people what they are entitled to." Robinson September 5, 2007 Transcript, at 25. Robinson continued that she was "sure I would have told her all the medical coverages, the wages, et cetera, that she would ah . . . would know would be involved in this particular case." Id at 32.

5

Robinson explained that Hill was paid the $5.00 an hour wage of an aide as opposed to a $10.00 to $11.00 an hour wage paid to an agency because agencies have additional overhead. Id at 35.

> Q. Going back to that $5.00 an hour, you would have communicated to the family that that's all they're entitled to for supervisory attendant care, correct? In terms of an hourly rate?
>
> A. [by Robinson] No. I would indicate that based on our ah review of other facilities that this is the going rate for a nurse's aide and this is what we would be willing to pay on this case. And it was accepted by her.
>
> \* \* \*
>
> Q. Shouldn't you have told Mrs. Hill that the reason we're only paying you $5.00 an hour is because you don't have any overhead, so that she could justify to you what overhead she actually did have?
>
> A. I don't have any proof that I didn't tell her that.

Id at 34, 36. When asked if there was any case law to support her position that a $5.00 hourly rate could be paid due to lack of overhead, Robinson replied "No." Id at 35-36.

Hill's December 5, 1990 letter and Robinson's response are set forth in the same document:

> Dear Betty [Robinson]:
>
> Can you please tell me who determines the rate of money for the gas mileage?
> Since the price increases, and now the tax raise has the rate gone up? I find it very difficult to travel with Kyle on ten cents a mile.
>
> Thank you,
>
> Beverly J. Hill
>
> *In response to the above:*
>
> *State Farm actually pays 9¢ per mile for transportation expenses based on a trial court case that confirmed this fee to be reasonable. Because of my*

*heavy case load I find it easier to compute at 10¢ without chasing down a calculator to do the computations. I am allowed to "deviate" from the 9¢ due to my many years experience with State Farm. At this point in time no provisions have been made to increase this amount.*

*Betty [Robinson]*

Plaintiff's Exhibit A (italics indicates Robinson's response).

Murphy testified that, consistent with State Farm's "Good Neighbor Service," she believes she should explain all benefits under the policy to the insured. Murphy January 23, 2008 Transcript, at 18-19. Murphy agreed that she should be courteous, truthful, diligent in investigating claims, and not ignore available information. Id at 19.

To prevail on a claim of fraud, the plaintiff must prove: (1) a material representation; (2) that was false; (3) that was knowingly or recklessly made as false; (4) made with the intent that the plaintiff would rely on the misrepresentation; (5) the plaintiff's action in reliance on the misrepresentation; and (6) injury. Hi-Way Motor Co. v. International Harvester Co., 398 Mich. 330, 336, 247 N.W.2d 813 (1976). A fraudulent misrepresentation must relate to a past or existing fact, not future events. Id. Expressions of opinion, as opposed to fact, are generally not actionable in fraud. McDonald v. Smith, 139 Mich. 211, 216, 102 N.W. 668 (1905) (finding representation that a worthless medicine would cure cholera was an actionable misrepresentation of fact). Expressions of opinion of probable value, made in bad faith by a person with superior knowledge of the matter for the purpose to deceive and mislead, may be actionable in fraud. French v. Ryan, 104 Mich. 625, 62 N.W. 1016 (1895) (finding seller's opinions relating to expected profitability of business were admissible to prove fraud).
7

"Silent fraud" is actionable on proof that the defendant owed a legal or equitable duty under the circumstances to disclose information, and suppressed that information. Hord v. Environmental Research Institute of Michigan, 463 Mich. 399, 412, 617 N.W.2d 543 (2000) (citing United States Fidelity and Guarantee Co. v. Black, 412 Mich. 99, 125, 313 N.W.2d 77 (1981)). The legal or equitable duty to disclose may arise where the plaintiff makes a specific and direct inquiry, and the defendant makes an incomplete reply as an affirmative misrepresentation which causes the plaintiff to reasonably rely on the misrepresentation. Hord, 463 Mich. at 412 (citing M&D, Inc. v. W.B. McConkey, 231 Mich. App. 22, 585 N.W.2d 33 (1998)); Buntea v. State Farm Mutual Auto Ins. Co., 467 F.Supp.2d 740, 748-49 (E.D. Mich. 2006) (Edmunds, J.) (relying on Bromley v. Citizens Ins. Co., 113 Mich. App. 131, 317 N.W.2d 318 (1982)). "The gist of the [silent fraud] action is fraudulently producing a false impression on the mind of the other party." McConkey, 231 Mich. App. at 31 (quoting Wolfe v. A E Kusterer & Co., 269 Mich. 424, 427-428, 257 N.W. 729 (1934)) (emphasis omitted).

Construed in a light most favorable to Basirico, Basirico's proffered evidence does not support a reasonable finding that Robinson or Murphy made a misrepresentation of past or existing fact, an opinion of fact, or an incomplete affirmation of fact which caused Hill or Basirico to reasonably believe that the level of benefits paid by State Farm were beyond challenge. Amway Distributors, 323 F.3d at 390; McLean, 224 F.3d at 797, 800; Hi-Way Motor Co., 398 Mich. at 336; Hord, 463 Mich. at 412; Buntea, 467 F.Supp.2d at 748-749. Robinson told Hill that State Farm "would be willing to pay" $5.00 an hour for attendant care services, that State Farm would not pay Hill for attendant care services during the time when Moffitt was sleeping, that State Farm had fully reimbursed Hill for gas

8

mileage, that State Farm would not reimburse Hill for a vacation, and that State Farm would reimburse Hill for one-half the cost of central air conditioning. Robinson September 5, 2007 Transcript, at 34. These representations of fact were true in that Robinson did not misrepresent the level of benefits State Farm was willing to pay.

Basirico's theory of recovery goes further by arguing that Robinson and Murphy committed fraud by failing to further explain that Moffitt could challenge the level of benefits paid by State Farm, either by submitting evidence of other reimbursable benefits under the policy, such as "overhead," id, at 34, 36, or by challenging State Farm's legal opinions, such as the 9¢ per mile transportation reimbursement rate Robinson based on "a trial court case." Plaintiff's Exhibit A. As this court previously held, the insurer-insured relationship did not create a duty on the part of State Farm's Robinson or Murphy to advise Hill or Basirico regarding the insurance benefits Moffitt was entitled to receive. See December 5, 2006 Order, at 7 (quoting Wynn v. State Farm Mutual Ins. Co., 856 F. Supp. 330, 335 (E.D. Mich. 1994) and citing Drouillard v. Metropolitan Life Ins. Co., 107 Mich. App. 608, 621, 310 N.W.2d 15 (1981)). Robinson's opinion based on a "trial court opinion" that Hill was only entitled to 9¢ a mile for transportation could not reasonably be construed as an actionable representation of fact. Hi-Way Motor Co., 398 Mich. at 336; McDonald, 139 Mich. at 216. Robinson's opinion is not analogous to a seller's misrepresentations concerning a product's ability to cure disease, or the expected profitability of a company. Compare McDonald, 139 Mich. at 216; French, 104 Mich. at 628-30. Moreover, plaintiff has not identified record evidence to conclude that any part of the statement is literally false.

Robinson's testimony, as proffered by Basirico, also fails to reflect incomplete

affirmative misrepresentations (misrepresentations by omission) to Hill's and Basirico's inquiries. Hord, 463 Mich. at 412. Hill's specific requests as to why State Farm would not pay for 24-hour care, the full cost of central air conditioning, and for a family vacation were fully answered by Robinson; State Farm would not pay Hill for attendant care services for the eight hours a day Moffitt was presumed to be sleeping, State Farm agreed to pay only 50% of the air conditioning cost because Moffitt would not be in the entire house and the air conditioning was for the benefit of the entire family, and State Farm would not pay for a family vacation attended by Moffitt because Hill would have taken the vacation "no matter what." Hill June 6, 2007 Transcript, at 25, 57; Robinson September 5, 2007 Transcript, at 21, 25. Hill's specific written request as to "who determines the rate of money for the gas mileage" was fully answered by Robinson in writing; Robinson determined the 10¢ a mile rate, with State Farm actually authorizing only 9¢ a mile. Plaintiff's Exhibit A. Robinson's replies could not reasonably be construed as giving Hill a "false impression." McConkey, 231 Mich. App. at 31.

In denying an earlier motion to dismiss filed by State Farm, the court previously distinguished the Michigan Court of Appeals decision in Bromley, which refused to impose strict liability upon insurers to interpret the law and insurance contracts accurately, instead holding that, once an insurance agent tells the insured his legal opinion as to coverage, it is incumbent upon the insured to seek legal assistance if he disagreed. December 5, 2006 Order, at 12 (quoting Bromley, 113 Mich. App. at 137). This court noted that Bromley involved an insurance agent as opposed to an adjuster, and found it remained possible for Basirico to develop a factual record to support a finding that State Farm adjusters made "false representations with the intent that Moffitt and his representatives would rely on the

misrepresentations to their detriment." Id at 13. As discussed above, Basirico has failed to meet that burden in opposing State Farm's motion for summary judgment. On this record, Bromley is no longer distinguishable. To the extent Robinson conveyed her legal opinions of coverage to Hill or Basirico, such cannot support a finding of fraud. Buntea, 467 F.Supp.2d at 748-49 (citing Bromley, 113 Mich. App. at 317 for the proposition that "statements regarding an initial offer of benefits to an insured do not constitute the misrepresentation required for a viable fraud claim under Michigan law"). After receiving Robinson's explanations, it was incumbent upon Hill and Basirico to seek legal assistance if they disagreed. Bromley, 113 Mich. App. at 137. The record does not support a finding that Hill and Basirico reasonably relied on Robinson's representations as unchallengeable, causing them to detrimentally eschew seeking legal advice.

Basirico has not come forward with evidence to support her fraud claims alleging Murphy told Basirico in 2001 that she was only entitled to be paid at the rate of an unskilled aide, or that Robinson informed Ronald Moffitt in a July 2005 letter that State Farm owed no duty to supply housing or to pay for utilities and groceries. First Nat'l Bank, 391 U.S. at 270. Consistent with the above analysis, these factually unsupported claims, even if true, would not permit a reasonable jury to find fraud. Buntea, 467 F.Supp.2d at 748-749; Bromley, 113 Mich. App. at 137. Murphy's opinion as to what State Farm's "Good Neighbor Service" required does not support a finding of fraud because her opinion goes to a mere contractual obligation. See Buntea, 467 F.Supp.2d at 744-45. State Farm is entitled to summary judgment of Count I alleging silent fraud and Count II alleging fraudulent misrepresentation as a matter of law. Amway Distributors, 323 F.3d at 390; McLean, 224 F.3d at 797, 800.

### III. Negligence

Basirico's theory of negligence is premised on State Farm's alleged breach of a voluntarily assumed duty to advise Moffitt and his agents regarding the insurance benefits they were entitled to receive. See Zychowski v. A.J. Marshall Co., Inc., 233 Mich. App. 229, 231, 590 N.W.2d 301 (1999). Consistent with the analysis in Section II, supra, Basirico has failed to come forward with evidence to support a finding that State Farm voluntarily assumed a duty to advise Moffitt and his agents beyond State Farm's contractual obligation. See Buntea, 467 F.Supp.2d at 748-49 (dismissing negligence claim commensurate with finding that insured did not owe a legal duty to disclose under a theory of silent fraud). Robinson's testimony that it is her "general practice on catastrophic claims to tell the people what they are entitled to" does not evidence that Robinson assumed a function that she was not otherwise required to perform under the insurance contract. See Zychowski, 233 Mich. App. at 231. Robinson's testimony demonstrates she told Hill what State Farm was willing to pay under the insurance contract. Again, Murphy's opinion as to what State Farm's "Good Neighbor Service" required does not support a finding that State Farm volunteered to advise Moffitt about her legal options. Simply telling Hill and Basirico the benefits State Farm would pay, and why State Farm denied other benefits, could not possibly be construed as volunteering to be Moffitt's advisor. Michigan has refused to impose strict liability against insurers. Bromley, 113 Mich. App. at 137. State Farm is entitled to summary judgment of Count IV alleging negligence as a matter of law. Amway Distributors, 323 F.3d at 390; McLean, 224 F.3d at 797, 800.

### IV. MCPA

In denying an earlier motion to dismiss filed by State Farm, this court determined

that an amendment to the MCPA, M.C.L. § 445.904(3), providing that the MCPA "does not apply to or create a cause of action for an unfair, unconscionable, or deceptive method, act, or practice made unlawful" by the UTPA, applied prospective to its March 28, 2001 effective date, and therefore it remained possible for Basirico to develop a factual record that could support an actionable MCPA claim based on acts of fraud and resulting UTPA violations that occurred before March 28, 2001. See December 5, 2006 Order, at 15-17.

On summary judgment, Basirico has not met her burden of coming forward with specific facts showing that there is a genuine issue for trial as to whether State Farm committed acts of fraud or otherwise violated the UTPA prior to March 28, 2001. First Nat'l Bank, 391 U.S. at 270; McLean, 224 F.3d at 800. Basirico's silent fraud, fraud, and negligence claims have been determined herein to be without merit. See Sections II, III, supra. The allegations in Basirico's First Amended Complaint alone do not meet Basirico's burden of proffering *evidence* to support any remaining MCPA claim. Anderson, 477 U.S. at 252. In her response to State Farm's motion for summary judgment, Basirico simply restates her *allegations* that "State Farm engaged in unfair, unconscionable and/or deceptive conduct in violation of [the UTPA]," "violated its duty to act honestly and explain benefits under M.C.L. § 500.2006(3)," and "violated its duty not to misrepresent material facts, duty to communicate properly, the duty to affirm or deny coverage timely, the duty not to compel insureds to institute suit by underpaying, the duty to identify payments and coverage, and the duty to explain the basis for denial." Plaintiff's March 17, 2008 Response Brief, at 15-16. Basirico's limited proffered evidence does not support a reasonable finding that State Farm failed to act honestly and explain benefits, misrepresented material facts, improperly communicated with Moffitt's agents, failed to

13

timely affirm or deny coverage, or failed to explain the basis for any denial of coverage prior to March 28, 2001. State Farm is entitled to summary judgment of Basirico's MCPA claims as set forth in Count V as a matter of law.[2] Amway Distributors, 323 F.3d at 390; McLean, 224 F.3d at 797, 800.

## V. "One-Year-Back" Rule

In adjudicating an earlier motion to dismiss, the court held that the Michigan No-Fault Act's "one-year back" rule found at M.C.L. § 500.3145(1) limits recovery of no-fault benefits to the period one year before the lawsuit was filed, including no-fault benefit claims re-labeled as tort claims, but does not limit the recovery of non-contractual damages that do not represent lost no-fault benefits. December 5, 2006 Order, at 18-21. The court has determined herein that Basirico's non-contractual claims are subject to summary judgment. See Sections I-IV, supra. Consequently, Basirico is precluded from recovering damages in this lawsuit beyond the "one-year back" rule because the only remaining claims are contractual no-fault benefit claims governed by M.C.L. § 500.3145(1). Alternatively, Basirico has failed to proffer evidence that would support a finding that Moffitt suffered non-contractual damages as a result of State Farm's alleged conduct, that is, damages that do not represent unpaid no-fault damages. Anderson, 477 U.S. at 252. State Farm is entitled to summary judgment to the extent Basirico seeks contractual or non-contractual damages beyond the "one-year back" rule. Amway Distributors, 323 F.3d at 390; McLean, 224 F.3d

---

[2] The court need not address State Farm's argument that violations of the MCPA relative to insurance is limited to the sale of insurance policies. However, the court notes, for example, that a failure to timely affirm or deny coverage under the UTPA was arguably actionable under the MCPA prior to the amendment effective March 28, 2001, a claim unrelated to the sale of a policy.

at 797, 800.

## VII. Housing and Accommodations

In adjudicating a prior motion to dismiss, the court denied State Farm's motion in deference to factual development consistent with Griffith v. State Farm Mutual Auto Ins. Co., 472 Mich. 521, 536, 697 N.W.2d 896 (2005) as to whether the housing and accommodation no-fault benefits sought by Basirico are compensable as necessary for Moffitt's recovery, rehabilitation, or care relative to his insured injuries. In opposing State Farm's motion for summary judgment, Basircio has come forward with evidence that would allow a reasonable jury to conclude consistent with Griffith that Moffitt's housing and accommodations are compensable as necessary for his recovery, rehabilitation, or care. The parties do not dispute that, under Griffith and its progeny, housing and accommodations must be "necessary" to the recovery, rehabilitation, or care of Moffitt to constitute an expense covered by the No-Fault Act and Moffitt's policy. State Farm does not dispute that it has continued to pay Moffitt's housing and accommodation expenses. A July 18, 2001 letter authored by State Farm's Murphy expressly recognized that "[w]e currently pay living accommodations for Mr. Moffitt as are medically necessary." Plaintiff's Exhibit A. Construing the proffered evidence in a light most favorable to Basirico, the deposition testimony of Basirico and Moffitt proffered by State Farm does not place beyond all reasonable dispute whether Moffitt's current accommodations remain necessary for his recovery, rehabilitation, or care from the injuries he incurred in the April 13, 1989 motor vehicle accident. Accordingly, State Farm is not entitled to summary judgment to the extent Moffitt seeks recovery of housing and accommodation benefits under Count III alleging breach of contract. Amway Distributors, 323 F.3d at 390; McLean, 224 F.3d at 797, 800.

## VIII. Conclusion

For the reasons set forth above, defendant State Farm's motion for summary judgment is hereby GRANTED, IN PART, as to plaintiff Christine Basirico's claims alleged on behalf of Kyle Moffitt of silent fraud, fraud/misrepresentation, negligence, and violations of the MCPA. Basirico's claims as alleged in Counts I, II, IV and V are hereby DISMISSED with prejudice. State Farm's motion for summary judgment is also hereby GRANTED, IN PART, to the extent Basircio seeks damages beyond the "one-year back" rule of M.C.L. § 500.3145(1). Basirico's claims for contractual and non-contractual damages beyond the "one-year back" rule of M.C.L. § 500.3145(1) are also hereby DISMISSED with prejudice. State Farm's motion for summary judgment as to Basirico's claim for housing and accommodation no-fault benefits under Count III alleging breach of contract is hereby DENIED.

SO ORDERED.

Dated: June 17, 2008

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 17, 2008, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---